UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NATHAN MEHAFFY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KNOWLTON TECHNOLOGIES, LLC; EASTMAN TECHNOLOGIES, LLC; EASTMAN CHEMICAL COMPANY,

Defendants.

**COLLECTIVE & CLASS ACTION COMPLAINT**

Civil Action No. 5:23-cv-292 (GTS/TWD)

JURY TRIAL DEMAND

Plaintiff Nathan Mehaffy, upon personal knowledge as to himself, and upon information and belief as to other matters, respectfully alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action, individually and on behalf of all others similarly situated, against Defendants Knowlton Technologies, LLC, Eastman Technologies, LLC, and Eastman Chemical Company ("Defendants" or "Knowlton") for failure to pay overtime compensation in violation of Section 7 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, and Articles 6 and 19 of the New York Labor Law ("NYLL"), N.Y. Lab. Law, Arts. 6, 19.  Plaintiff also brings this action, individually and on behalf of all others similarly situated, against Defendants for failure to provide accurate wage statements in violation of Section 195(3) of the NYLL, N.Y. Lab. Law § 195(3), which resulted in the underpayment of overtime compensation.  Plaintiff seeks all unpaid overtime compensation, an additional amount as

liquidated damages equal to one hundred percent of the unpaid overtime compensation, damages not to exceed the statutory limits, all reasonable attorney's fees, prejudgment interest, and other available relief.

## JURISDICTION & VENUE

2.      The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337(a).  This Court has supplemental jurisdiction of claims arising under state law pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this action lies in the Northern District of New York under 28 U.S.C. § 1391(b)(1) and (2) because it is a judicial district in which Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated.

## PARTIES

4.      Plaintiff Nathan Mehaffy is a resident of Jefferson County, New York and employed by Defendants at a manufacturing facility located in Watertown, New York.

5.      Upon information and belief, Defendant Knowlton Technologies, LLC is a foreign limited liability company authorized to do business in the State of New York, with its principal place of business located in Watertown, New York.

6.      Upon information and belief, Defendant Eastman Technologies, LLC is a foreign limited liability company authorized to do business in the State of New York, with its principal place of business located in Watertown, New York.

{B0310705.1}

7.      Upon information and belief, Defendant Eastman Chemical Company is a foreign business corporation authorized to do business in the State of New York, with facilities located in Watertown, New York, and its principal place of business located in Kingsport, Tennessee.

8.      During all relevant periods, Defendants were the employer of Plaintiff within the meaning of 29 U.S.C. § 203(d).

9.      During all relevant periods, Defendants were enterprises engaged in commerce and in the production of goods for commerce; to wit, they have employees engaged in commerce or in the production of goods for commerce, and have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and they are enterprises whose annual gross volume of sales made or business done is not less than $500,000.

10.     During all relevant periods, Defendants were employers of Plaintiff within the meaning of NYLL § 190(3); to wit they are persons, corporations, limited liability companies, or associations employing any individual in any occupation, industry, trade, business, or service.

11.     During all relevant periods, Defendants were employers of Plaintiff within the meaning of NYLL § 651(6); to wit they are individuals, partnerships, associations, corporations, limited liability companies, business trusts, legal representatives, or any organized group of persons acting as an employer.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

12.     Plaintiff brings this action for FLSA violations as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of himself and the following class of similarly situated persons:

All persons employed by Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York, who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in excess of forty (40) hours during one or more work weeks from March 3, 2020 to the present ("FLSA Class").

13.     All members of the FLSA Class were generally subject to the same terms and conditions of employment.

14.     In addition to their normal hourly wage, all members of the FLSA Class were entitled to receive additional wages for working second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.), known as "shift differential pay."

15.     All members of the FLSA Class were entitled to have their shift differential pay included as part of their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

16.     All members of the FLSA Class were subjected to a uniform policy or practice whereby Defendants failed and refused to include their shift differential pay as part of their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

17.     All members of the FLSA Class have suffered the same type of injury in the form of unpaid overtime compensation, and in each case such injury was caused by the uniform policy or practice described in the preceding paragraph.

## NYLL CLASS ACTION ALLEGATIONS

**NYLL Overtime Subclass**

18.    Plaintiff brings this action for NYLL overtime violations as a class action under

Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the following class of

similarly situated persons:

> All persons employed by Defendants as hourly non-exempt employees at the
> Knowlton facility in Watertown, New York, who worked second shift (2:00
> p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in excess of
> forty (40) hours during one or more work weeks from March 3, 2017 to the
> present ("NYLL Overtime Subclass").

19.    The members of the NYLL Overtime Subclass are so numerous that joinder of all

members is impracticable.  Upon information and belief, over 100 persons were employed by

Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York,

who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in

excess of forty (40) hours during one or more work weeks from March 3, 2017 to the present.

20.    Questions of law or fact that are common to the NYLL Overtime Subclass

predominate over any individual issues.  The central question of fact that applies to all

members of the NYLL Overtime Subclass is whether Defendants excluded their shift differential

pay from their total compensation for purposes of determining their statutory overtime rate of

pay during weeks when they worked in excess of forty (40) hours.  The central question of law

that applies to all members of the NYLL Overtime Subclass is whether Defendants were

required by law to include their shift differential pay as part of their total compensation for

purposes of determining their statutory overtime rate of pay during weeks when they worked

in excess of forty (40) hours.  Given the uniform, systematic nature of Defendants' actions as it

relates to the calculation of the overtime rate, the above issues of law and fact are common to all members of the NYLL Overtime Subclass and undoubtedly predominate over any individualized issues.

21.     Plaintiff's claims are typical of the claims of the NYLL Overtime Subclass.  As explained further below, Plaintiff is an hourly non-exempt employee at Defendants' facility in Watertown, New York, who has worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in excess of forty (40) hours during many work weeks from March 3, 2017 to the present.  However, pursuant to Defendants' uniform policy or practice of excluding shift differential pay from his total compensation for purposes of determining his statutory overtime rate, Plaintiff was denied overtime compensation to which he was statutorily entitled.

22.     Plaintiff will fairly and adequately protect the interests of the NYLL Overtime Subclass and has retained counsel that is experienced in labor and employment law matters and in prosecuting class actions.  Plaintiff has no conflict of interest with the NYLL Overtime Subclass.

23.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it concerns Defendants' uniform, systematic violations, to wit, its failure and refusal to include class members' shift differential pay as part of their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

**NYLL Wage Statement Subclass**

24.     Plaintiff brings this action for NYLL violations as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated persons:

> All persons employed by Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York, who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) during one or more work weeks from March 3, 2017 to the present ("NYLL Wage Statement Subclass").

25.     The members of the NYLL Wage Statement Subclass are so numerous that joinder of all members is impracticable.  Upon information and belief, over 100 persons were employed by Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York, who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) during one or more work weeks from March 3, 2017 to the present.

26.     Questions of law or fact that are common to the NYLL Wage Statement Subclass predominate over any individual issues.  The central question of fact that applies to all members of the NYLL Wage Statement Subclass is whether Defendants failed to include the statutorily required rates of pay and number of hours worked for second- and third-shift work on employees' wage statements, and failed to include the correct overtime rate of pay on such statements.  The central question of law that applies to all members of the NYLL Wage Statement Subclass is whether Defendants' failure to include the statutorily required rates of pay and number of hours worked on employees' wage statements, and the correct overtime rate of pay on such statements constitutes of violation of Section 195(3) of the NYLL.  Given the uniform, systematic nature of Defendants' actions as it relates to the provision of wage

statements to employees, the above issues of law and fact are common to all members of the NYLL Wage Statement Subclass and undoubtedly predominate over any individualized issues.

27.     Plaintiff's claims are typical of the claims of the NYLL Wage Statement Subclass. Plaintiff is an hourly non-exempt employee at Defendants' facility in Watertown, New York, who has worked second shift (2:00 p.m. to 10:00 p.m.) and third shift (10:00 p.m. to 6:00 a.m.) during many work weeks from March 3, 2017 to the present.  During those work weeks, Plaintiff received wage statements that improperly omitted the hourly rate and number of hours worked for his second- and third-shift work and also contained incorrect overtime rates for those weeks when he worked in excess of forty (40) hours.

28.     Plaintiff will fairly and adequately protect the interests of the NYLL Wage Statement Subclass and has retained counsel that is experienced in labor and employment law matters and in prosecuting class actions.  Plaintiff has no conflict of interest with the NYLL Wage Statement Subclass.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it concerns Defendants' uniform, systematic violations, to wit, its failure to provide accurate wage statements as required by the NYLL.

**FACTUAL ALLEGATIONS**

30.     Defendants maintain a manufacturing facility in Watertown, New York.

31.     Plaintiff Nathan Mehaffy is a nonexempt hourly worker employed by Defendants at their facility in Watertown, New York, where he has been employed since 2006.

**Unpaid Overtime Allegations**

32.     Since at least March 3, 2017, Plaintiff has worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) on many occasions.

33.     During each year since at least 2017, Plaintiff has worked hundreds of hours per year on second and/or third shift.

34.     Pursuant to a collective bargaining agreement between Defendant Knowlton Technologies, LLC and the United Steelworkers union that represents Plaintiff and all other hourly production and maintenance employees at the Watertown facility—which encompasses all members of the FLSA Class, NYLL Overtime Subclass, and NYLL Wage Statement Subclass—Defendants must pay additional wages for working second or third shift, known as "shift differential pay."

35.     Since at least March 3, 2017, Defendants have generally paid shift differential pay to Plaintiff for the second- and third-shift hours he has worked during the relevant period; however, Defendants have excluded his shift differential pay from his total compensation for purposes of determining his statutory overtime rate of pay during weeks when he worked in excess of forty (40) hours.

36.     Defendants' failure and refusal to include Plaintiff's shift differential pay as part of his total compensation for purposes of determining his statutory overtime rate resulted in the unlawful nonpayment of overtime compensation in dozens of work weeks each year from 2017 to the present.

37.     By way of example:

        a.      During the work week ending May 5, 2022, Plaintiff worked 32 hours on second shift and 23.5 hours on third shift and received his normal hourly pay plus an

additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 15.5 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

b.      During the work week ending May 9, 2021, Plaintiff worked 46 hours on third shift and received his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 6 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

c.      During the work week ending October 18, 2020, Plaintiff worked 57 hours on third shift and received his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 17 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

d.      During the work week ending August 11, 2019, Plaintiff worked 41.25 hours on third shift and received his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 1.25 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

e.      During many work weeks in 2018 and 2017, Plaintiff worked second and/or third shift and more than forty (40) hours, receiving his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional hours of work in excess of forty (40) was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

38.     During the many other work weeks during the relevant period when Plaintiff worked second or third shift and also worked in excess of 40 hours, his overtime compensation was similarly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

39.     Defendants' payment of overtime compensation based on one and one-half times the normal hourly rate, instead of one and one-half times the normal hourly rate plus the shift differential pay was part of a uniform, systematic payroll practice or procedure that impacted all hourly employees who worked second or third shift and also worked in excess of 40 hours in a given week.

40.     Indeed, since at least March 3, 2017, Defendants have excluded the shift differential pay of members of the FLSA Class and NYLL Overtime Subclass from their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

41.     Defendants' failure and refusal to include the shift differential pay as part of employees' total compensation for purposes of determining their statutory overtime rate of pay was willful in nature.

42.    Defendants knew or showed reckless disregard for the fact that shift differential pay must be included as part of employees' total compensation for purposes of determining their statutory overtime rate of pay.

43.    Section 7(e) of the FLSA defines the "'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," and goes on to list specific exclusions that do not encompass shift differential pay.  29 U.S.C. § 207(e).

44.    In 1948, the U.S. Supreme Court held that when calculating an employee's statutory "regular rate" of pay for the purposes of determining the overtime rate under the FLSA, an employer is required to include extra compensation in the form of shift differentials that were included in the employee's straight-time wage rate.  *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 469 (1948).

45.    Since approximately 1968, Section 778.207(b) of Title 29 of the Code of Federal Regulations has provided that "[t]he [Fair Labor Standards] Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work."  29 C.F.R. 778.207(b).

46.    Since long before March 3, 2017, the NYLL and regulations duly promulgated thereunder have plainly required the inclusion of shift differential pay in determining the "regular rate" by virtue of its incorporation of the FLSA's "regular rate" provisions and jurisprudence.

47.     Based on the long-established and clear legal requirement that shift differential pay be included as part of employees' total compensation for purposes of determining their statutory overtime rate of pay under the FLSA and NYLL, there is no nonfrivolous justification for Defendants' failure and refusal to do so or for any claimed lack of notice of such requirement.

48.     As a direct and proximate result of Defendants' refusal to include the shift differential pay in determining employees' statutory overtime rate of pay, Plaintiff and members of the FLSA Class and NYLL Overtime Subclass have been denied overtime compensation in violation of the FLSA and NYLL.

49.     In or about October 2022, as a result of an investigation by the U.S. Department of Labor, Defendants made a partial payment of the back wages and liquidated damages owed to Plaintiff and members of the FLSA Collective and NYLL Overtime Subclass under the FLSA arising from their exclusion of the shift differential pay from employees' total compensation for purposes of determining their statutory overtime rate of pay.  However, those partial payments only covered federal violations under the FLSA for the approximate time period of October 1, 2020 to October 1, 2022, and thus did not remedy the NYLL violations or any overtime pay violations outside of that time period.

**Inaccurate Wage Statement Allegations**

50.     Since at least March 3, 2017, Plaintiff has received weekly wage statements or "earning statements" from Defendants.

51.     During weeks when Plaintiff worked second or third shift, the wage statements failed to state the rate of pay and number of hours worked for such shifts.

52.     The wage statements also failed to state the accurate overtime rate as a result of Defendants' willful failure to include the shift differential pay when calculating the overtime pay rate.

53.     By way of example:

a.      For the work week ending on May 5, 2022, during which Plaintiff worked second and third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his second- or third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

b.      For the work week ending on May 9, 2021, during which Plaintiff worked third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

c.      For the work week ending on October 18, 2020, during which Plaintiff worked third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

d.      For the work week ending on August 11, 2019, during which Plaintiff worked third shift, Plaintiff received a wage statement that did not reflect his hourly

rate or number of hours worked for his third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

e.     For many work weeks in 2018 and 2017 during which Plaintiff worked second and/or third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his second- or third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

54.     The hundreds of other wage statements that Plaintiff received from March 3, 2017 to the present contained similar omissions and errors.

55.     Defendants' failure to include all rates of pay and the number of hours worked for second- or third-shift work, and the correct overtime rate on employees' wage statements was part of a uniform, systematic payroll practice or procedure that impacted all hourly employees who worked second or third shift and/or worked in excess of 40 hours in a given week.

56.     Indeed, since at least March 3, 2017, Defendants have provided inaccurate wage statements to all members of the NYLL Wage Statement Subclass in the manner described above.

57.     The nature of the omissions and errors on the wage statements provided to Plaintiff and members of the NYLL Wage Statement Subclass was such that Plaintiff and, upon information and belief, members of the NYLL Wage Statement Subclass were unaware of their

hourly rate or hours worked for their second- and third-shift work and, thus, were prevented

from discovering that Defendants were using the incorrect overtime rate due to the exclusion

of shift differential pay.

58.     Accordingly, the omissions and errors on the wage statements provided to

Plaintiff and members of the NYLL Wage Statement Subclass resulted in the underpayment of

overtime compensation as set forth in paragraphs 32-49 above.

59.     As a direct and proximate result of Defendants' conduct in providing inaccurate

wage statements to Plaintiff and members of the NYLL Wage Statement Subclass in the manner

described, Plaintiff and members of the NYLL Wage Statement Subclass have been injured

thereby in violation of the NYLL.

## FIRST CAUSE OF ACTION

**Failure to Pay Overtime Compensation
Section 7 of the FLSA, 29 U.S.C. § 207
By Plaintiff on behalf of Himself and the FLSA Class**

60.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs

1-59 above as if fully set forth herein.

61.     Plaintiff and members of the FLSA Class are nonexempt employees entitled to be

paid at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of

forty (40) in a work week.

62.     Plaintiff and members of the FLSA Class were entitled to be paid shift differential

pay for working second or third shift and to have that shift differential pay included in their

total weekly compensation for purposes of determining their statutory overtime rate of pay.

63.     Defendants unlawfully excluded Plaintiff's and FLSA Class members' shift differential pay from their total weekly compensation for purposes of determining their statutory overtime rate of pay, thus denying them overtime compensation in work weeks when they worked second or third shift, and in excess of forty (40) hours.

64.     Defendants' actions constituted a willful violation of the FLSA.

65.     Defendants are liable to Plaintiff and members of the FLSA Class for all unpaid overtime compensation, an equal amount of liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief afforded under the FLSA.

## SECOND CAUSE OF ACTION

**Failure to Pay Overtime Compensation**
**Articles 6 and 19 of the NYLL, N.Y. Lab. Law Arts. 6, 19**
**By Plaintiff on behalf of Himself and the NYLL Overtime Subclass**

66.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-65 above as if fully set forth herein.

67.     Plaintiff and members of the NYLL Overtime Subclass are nonexempt employees entitled to be paid at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty (40) in a work week.

68.     Plaintiff and members of the NYLL Overtime Subclass were entitled to be paid shift differential pay for working second or third shift and to have that shift differential pay included in their total weekly compensation for purposes of determining their statutory overtime rate of pay.

69.     Defendants unlawfully excluded Plaintiff's and NYLL Overtime Subclass members' shift differential pay from their total weekly compensation for purposes of

determining their statutory overtime rate of pay, thus denying them overtime compensation in work weeks when they worked second or third shift, and in excess of forty (40) hours.

70.    Defendants' actions constituted a violation of the NYLL.

71.    Defendants are liable to Plaintiff and members of the NYLL Overtime Subclass for all unpaid overtime compensation, an equal amount of liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief afforded under the NYLL.

### THIRD CAUSE OF ACTION

**Failure to Provide Accurate Wage Statements**
**Section 195(3) of the NYLL, N.Y. Lab. Law § 195(3)**
**By Plaintiff on behalf of Himself and the NYLL Wage Statement Subclass**

72.    Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-71 above as if fully set forth herein.

73.    Defendants have provided inaccurate weekly wage statements to Plaintiff and members of the NYLL Wage Statement Subclass.

74.    During weeks when Plaintiff and members of the NYLL Wage Statement Subclass worked second or third shift, the wage statements failed to state the rate of pay and number of hours worked for such shifts.

75.    The nature of the omissions and errors on the wage statements provided to Plaintiff and members of the NYLL Wage Statement Subclass was such that Plaintiff and, upon information and belief, members of the NYLL Wage Statement Subclass were unaware of their hourly rate or hours worked for their second- and third-shift work and, thus, were prevented from discovering that Defendants were using the incorrect overtime rate due to the exclusion of shift differential pay.

{B0310705.1}

76.     Accordingly, the omissions and errors on the wage statements provided to Plaintiff and members of the NYLL Wage Statement Subclass resulted in the underpayment of overtime compensation as set forth in paragraphs 32-49 above.

77.     The wage statements also failed to state the accurate overtime rate as a result of Defendants' willful refusal to include the shift differential pay when calculating the overtime pay rate.

78.     Defendants' actions constituted a violation of the NYLL.

79.     Defendants are liable to Plaintiff and members of the NYLL Wage Statement Subclass for all damages not to exceed the statutory limits, prejudgment interest, reasonable attorney's fees and costs, and all other relief afforded under the NYLL.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

a.      Certification of this action as a collective action on behalf of the FLSA Class and permission to issue notice pursuant to 29 U.S.C. § 216(b);

b.      Certification of this action as a class action on behalf of the NYLL Overtime Subclass and the NYLL Wage Statement Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.      An award of unpaid overtime compensation due under the FLSA and NYLL;

d.      An award of liquidated damages equal to the amount of unpaid overtime compensation due under the FLSA and NYLL;

e.      An award of damages not to exceed the statutory limits;

{B0310705.1}

19

f.      An award of attorney's fees and costs;

g.      Pre-judgment and post-judgment interest, as provided by law; and

h.      Any and all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial on every issue so triable.


DATED:  March 3, 2023
        Syracuse, New York                    **BLITMAN & KING LLP**

                                              s/ Brian J. LaClair
                                              Brian J. LaClair (NDNY Bar Roll # 515995)
                                              F. Wesley Turner (NDNY admission pending)
                                              Franklin Center, Suite 300
                                              443 North Franklin Street
                                              Syracuse, New York 13204
                                              (315) 422-7111
                                              bjlaclair@bklawyers.com
                                              fwturner@bklawyers.com

                                              *Attorneys for Plaintiff Nathan Mehaffy,*
                                              *individually and on behalf of all others*
                                              *similarly situated*