UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NATHAN MEHAFFY, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

No. 5:23-CV-00292 (GTS/TWD)

KNOWLTON TECHNOLOGIES, LLC; EASTMAN
TECHNOLOGIES, LCC; EASTMAN CHEMICAL
COMPANY,

Defendants.

**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

On October 2, 2023, the Court heard an unopposed motion for approval of settlement

by Plaintiff Nathan Mehaffy ("Plaintiff" or "Class Representative"). The Court has considered

the Settlement Agreement & Release filed under seal ("Settlement") and the proposed Notice

of Proposed Class and Collective Action Settlement and Final Settlement Approval Hearing

("Class Notice") and hereby finds and orders as follows:

The Court finds on a preliminary basis that the Settlement filed with the Court under

seal falls within the range of reasonableness and, therefore, meets the requirements for

preliminary approval.

The Court certifies, for settlement purposes only, the following class ("Class") described

in the Settlement: "All persons employed by Knowlton as hourly non-exempt at the Knowlton

facility in Watertown, New York, that are listed on Exhibit A."

The Court finds, for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b)(3) are satisfied.

This Order, which certifies a class action for settlement purposes only, shall not be cited in this or any matter for the purpose of seeking class or collective certification, opposing decertification, or for any other purpose, other than enforcing the terms of the Settlement.

The Court appoints, for settlement purposes only, as Class Representative Nathan Mehaffy.

The Court appoints, for settlement purposes only, Brian J. LaClair, Blitman & King LLP as Class Counsel for the purposes of Settlement and the releases and other obligations therein. RG2 Claims Administration LLP is appointed as the Settlement Administrator.

This Order bars the Class Representative, Class Members, and Class Counsel from filing or prosecuting any other claims covered by the releases set forth in the Settlement.

The Class Notice, attached as Exhibit B to the Declaration of Brian J. LaClair accompanying the Motion for Preliminary Approval, is approved.  The Settlement Administrator is ordered to mail the Class Notice to the Class Members as provided in the Settlement.

Each Class Member shall have thirty (30) days from the date on which the Settlement Administrator mails the Class Notice to request to be excluded from the Class or to object to the Settlement in writing consistent with the Settlement and instructions contained in the Class Notice.

The Court will conduct a Final Approval Hearing on ___November 29__2023 at __10:00__a.m./p.m. to determine the overall fairness of the Settlement and attorneys' fees and costs to Class Counsel.  The Final Approval Hearing may be continued without further notice to Class

Members.  Class Counsel shall file their motion for final approval of the Settlement, including

for approval of attorneys' fees, costs, on or before <u>November  13</u>, 2023.  The Court reserves

the right to cancel the Final Approval Hearing and decide the matter on submission if no timely

and proper objections are received from class members.


IT IS SO ORDERED.

Dated: <u>October 5</u>, 2023

Glenn T. Suddaby
U.S. District Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NATHAN MEHAFFY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KNOWLTON TECHNOLOGIES, LLC; EASTMAN TECHNOLOGIES, LLC; EASTMAN CHEMICAL COMPANY,<br><br>        Defendants. | **COLLECTIVE & CLASS ACTION COMPLAINT**<br><br>Civil Action No. <u>5:23-cv-292 (GTS/TWD)</u><br><br>JURY TRIAL DEMAND |

       Plaintiff Nathan Mehaffy, upon personal knowledge as to himself, and upon information and belief as to other matters, respectfully alleges as follows:

## NATURE OF THE ACTION

       1.    Plaintiff brings this action, individually and on behalf of all others similarly situated, against Defendants Knowlton Technologies, LLC, Eastman Technologies, LLC, and Eastman Chemical Company ("Defendants" or "Knowlton") for failure to pay overtime compensation in violation of Section 7 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, and Articles 6 and 19 of the New York Labor Law ("NYLL"), N.Y. Lab. Law, Arts. 6, 19.  Plaintiff also brings this action, individually and on behalf of all others similarly situated, against Defendants for failure to provide accurate wage statements in violation of Section 195(3) of the NYLL, N.Y. Lab. Law § 195(3), which resulted in the underpayment of overtime compensation.  Plaintiff seeks all unpaid overtime compensation, an additional amount as

liquidated damages equal to one hundred percent of the unpaid overtime compensation, damages not to exceed the statutory limits, all reasonable attorney's fees, prejudgment interest, and other available relief.

## JURISDICTION & VENUE

2.      The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337(a).  This Court has supplemental jurisdiction of claims arising under state law pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this action lies in the Northern District of New York under 28 U.S.C. § 1391(b)(1) and (2) because it is a judicial district in which Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated.

## PARTIES

4.      Plaintiff Nathan Mehaffy is a resident of Jefferson County, New York and employed by Defendants at a manufacturing facility located in Watertown, New York.

5.      Upon information and belief, Defendant Knowlton Technologies, LLC is a foreign limited liability company authorized to do business in the State of New York, with its principal place of business located in Watertown, New York.

6.      Upon information and belief, Defendant Eastman Technologies, LLC is a foreign limited liability company authorized to do business in the State of New York, with its principal place of business located in Watertown, New York.

7.      Upon information and belief, Defendant Eastman Chemical Company is a foreign business corporation authorized to do business in the State of New York, with facilities located in Watertown, New York, and its principal place of business located in Kingsport, Tennessee.

8.      During all relevant periods, Defendants were the employer of Plaintiff within the meaning of 29 U.S.C. § 203(d).

9.      During all relevant periods, Defendants were enterprises engaged in commerce and in the production of goods for commerce; to wit, they have employees engaged in commerce or in the production of goods for commerce, and have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and they are enterprises whose annual gross volume of sales made or business done is not less than $500,000.

10.     During all relevant periods, Defendants were employers of Plaintiff within the meaning of NYLL § 190(3); to wit they are persons, corporations, limited liability companies, or associations employing any individual in any occupation, industry, trade, business, or service.

11.     During all relevant periods, Defendants were employers of Plaintiff within the meaning of NYLL § 651(6); to wit they are individuals, partnerships, associations, corporations, limited liability companies, business trusts, legal representatives, or any organized group of persons acting as an employer.

### FLSA COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiff brings this action for FLSA violations as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of himself and the following class of similarly situated persons:

{B0310705.1}

3

All persons employed by Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York, who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in excess of forty (40) hours during one or more work weeks from March 3, 2020 to the present ("FLSA Class").

13. All members of the FLSA Class were generally subject to the same terms and conditions of employment.

14. In addition to their normal hourly wage, all members of the FLSA Class were entitled to receive additional wages for working second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.), known as "shift differential pay."

15. All members of the FLSA Class were entitled to have their shift differential pay included as part of their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

16. All members of the FLSA Class were subjected to a uniform policy or practice whereby Defendants failed and refused to include their shift differential pay as part of their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

17. All members of the FLSA Class have suffered the same type of injury in the form of unpaid overtime compensation, and in each case such injury was caused by the uniform policy or practice described in the preceding paragraph.

## NYLL CLASS ACTION ALLEGATIONS

**NYLL Overtime Subclass**

18.     Plaintiff brings this action for NYLL overtime violations as a class action under

Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the following class of

similarly situated persons:

> All persons employed by Defendants as hourly non-exempt employees at the
> Knowlton facility in Watertown, New York, who worked second shift (2:00
> p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in excess of
> forty (40) hours during one or more work weeks from March 3, 2017 to the
> present ("NYLL Overtime Subclass").

19.     The members of the NYLL Overtime Subclass are so numerous that joinder of all

members is impracticable.  Upon information and belief, over 100 persons were employed by

Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York,

who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in

excess of forty (40) hours during one or more work weeks from March 3, 2017 to the present.

20.     Questions of law or fact that are common to the NYLL Overtime Subclass

predominate over any individual issues.  The central question of fact that applies to all

members of the NYLL Overtime Subclass is whether Defendants excluded their shift differential

pay from their total compensation for purposes of determining their statutory overtime rate of

pay during weeks when they worked in excess of forty (40) hours.  The central question of law

that applies to all members of the NYLL Overtime Subclass is whether Defendants were

required by law to include their shift differential pay as part of their total compensation for

purposes of determining their statutory overtime rate of pay during weeks when they worked

in excess of forty (40) hours.  Given the uniform, systematic nature of Defendants' actions as it

relates to the calculation of the overtime rate, the above issues of law and fact are common to all members of the NYLL Overtime Subclass and undoubtedly predominate over any individualized issues.

21.    Plaintiff's claims are typical of the claims of the NYLL Overtime Subclass.  As explained further below, Plaintiff is an hourly non-exempt employee at Defendants' facility in Watertown, New York, who has worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) and in excess of forty (40) hours during many work weeks from March 3, 2017 to the present.  However, pursuant to Defendants' uniform policy or practice of excluding shift differential pay from his total compensation for purposes of determining his statutory overtime rate, Plaintiff was denied overtime compensation to which he was statutorily entitled.

22.    Plaintiff will fairly and adequately protect the interests of the NYLL Overtime Subclass and has retained counsel that is experienced in labor and employment law matters and in prosecuting class actions.  Plaintiff has no conflict of interest with the NYLL Overtime Subclass.

23.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it concerns Defendants' uniform, systematic violations, to wit, its failure and refusal to include class members' shift differential pay as part of their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

**NYLL Wage Statement Subclass**

24.     Plaintiff brings this action for NYLL violations as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated persons:

> All persons employed by Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York, who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) during one or more work weeks from March 3, 2017 to the present ("NYLL Wage Statement Subclass").

25.     The members of the NYLL Wage Statement Subclass are so numerous that joinder of all members is impracticable.  Upon information and belief, over 100 persons were employed by Defendants as hourly non-exempt employees at the Knowlton facility in Watertown, New York, who worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) during one or more work weeks from March 3, 2017 to the present.

26.     Questions of law or fact that are common to the NYLL Wage Statement Subclass predominate over any individual issues.  The central question of fact that applies to all members of the NYLL Wage Statement Subclass is whether Defendants failed to include the statutorily required rates of pay and number of hours worked for second- and third-shift work on employees' wage statements, and failed to include the correct overtime rate of pay on such statements.  The central question of law that applies to all members of the NYLL Wage Statement Subclass is whether Defendants' failure to include the statutorily required rates of pay and number of hours worked on employees' wage statements, and the correct overtime rate of pay on such statements constitutes of violation of Section 195(3) of the NYLL.  Given the uniform, systematic nature of Defendants' actions as it relates to the provision of wage

statements to employees, the above issues of law and fact are common to all members of the NYLL Wage Statement Subclass and undoubtedly predominate over any individualized issues.

27.     Plaintiff's claims are typical of the claims of the NYLL Wage Statement Subclass. Plaintiff is an hourly non-exempt employee at Defendants' facility in Watertown, New York, who has worked second shift (2:00 p.m. to 10:00 p.m.) and third shift (10:00 p.m. to 6:00 a.m.) during many work weeks from March 3, 2017 to the present.  During those work weeks, Plaintiff received wage statements that improperly omitted the hourly rate and number of hours worked for his second- and third-shift work and also contained incorrect overtime rates for those weeks when he worked in excess of forty (40) hours.

28.     Plaintiff will fairly and adequately protect the interests of the NYLL Wage Statement Subclass and has retained counsel that is experienced in labor and employment law matters and in prosecuting class actions.  Plaintiff has no conflict of interest with the NYLL Wage Statement Subclass.

29.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it concerns Defendants' uniform, systematic violations, to wit, its failure to provide accurate wage statements as required by the NYLL.

**FACTUAL ALLEGATIONS**

30.     Defendants maintain a manufacturing facility in Watertown, New York.

31.     Plaintiff Nathan Mehaffy is a nonexempt hourly worker employed by Defendants at their facility in Watertown, New York, where he has been employed since 2006.

**Unpaid Overtime Allegations**

32.     Since at least March 3, 2017, Plaintiff has worked second shift (2:00 p.m. to 10:00 p.m.) or third shift (10:00 p.m. to 6:00 a.m.) on many occasions.

33.     During each year since at least 2017, Plaintiff has worked hundreds of hours per year on second and/or third shift.

34.     Pursuant to a collective bargaining agreement between Defendant Knowlton Technologies, LLC and the United Steelworkers union that represents Plaintiff and all other hourly production and maintenance employees at the Watertown facility—which encompasses all members of the FLSA Class, NYLL Overtime Subclass, and NYLL Wage Statement Subclass—Defendants must pay additional wages for working second or third shift, known as "shift differential pay."

35.     Since at least March 3, 2017, Defendants have generally paid shift differential pay to Plaintiff for the second- and third-shift hours he has worked during the relevant period; however, Defendants have excluded his shift differential pay from his total compensation for purposes of determining his statutory overtime rate of pay during weeks when he worked in excess of forty (40) hours.

36.     Defendants' failure and refusal to include Plaintiff's shift differential pay as part of his total compensation for purposes of determining his statutory overtime rate resulted in the unlawful nonpayment of overtime compensation in dozens of work weeks each year from 2017 to the present.

37.     By way of example:

        a.      During the work week ending May 5, 2022, Plaintiff worked 32 hours on second shift and 23.5 hours on third shift and received his normal hourly pay plus an

additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 15.5 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

b.      During the work week ending May 9, 2021, Plaintiff worked 46 hours on third shift and received his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 6 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

c.      During the work week ending October 18, 2020, Plaintiff worked 57 hours on third shift and received his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 17 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

d.      During the work week ending August 11, 2019, Plaintiff worked 41.25 hours on third shift and received his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional 1.25 hours of work was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

e.      During many work weeks in 2018 and 2017, Plaintiff worked second and/or third shift and more than forty (40) hours, receiving his normal hourly pay plus an additional amount per hour in shift differential pay; however, the overtime compensation he received for the additional hours of work in excess of forty (40) was based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

38.     During the many other work weeks during the relevant period when Plaintiff worked second or third shift and also worked in excess of 40 hours, his overtime compensation was similarly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

39.     Defendants' payment of overtime compensation based on one and one-half times the normal hourly rate, instead of one and one-half times the normal hourly rate plus the shift differential pay was part of a uniform, systematic payroll practice or procedure that impacted all hourly employees who worked second or third shift and also worked in excess of 40 hours in a given week.

40.     Indeed, since at least March 3, 2017, Defendants have excluded the shift differential pay of members of the FLSA Class and NYLL Overtime Subclass from their total compensation for purposes of determining their statutory overtime rate of pay during weeks when they worked in excess of forty (40) hours.

41.     Defendants' failure and refusal to include the shift differential pay as part of employees' total compensation for purposes of determining their statutory overtime rate of pay was willful in nature.

{B0310705.1}

11

42.     Defendants knew or showed reckless disregard for the fact that shift differential pay must be included as part of employees' total compensation for purposes of determining their statutory overtime rate of pay.

43.     Section 7(e) of the FLSA defines the "'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee," and goes on to list specific exclusions that do not encompass shift differential pay.  29 U.S.C. § 207(e).

44.     In 1948, the U.S. Supreme Court held that when calculating an employee's statutory "regular rate" of pay for the purposes of determining the overtime rate under the FLSA, an employer is required to include extra compensation in the form of shift differentials that were included in the employee's straight-time wage rate.  *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 469 (1948).

45.     Since approximately 1968, Section 778.207(b) of Title 29 of the Code of Federal Regulations has provided that "[t]he [Fair Labor Standards] Act requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work."  29 C.F.R. 778.207(b).

46.     Since long before March 3, 2017, the NYLL and regulations duly promulgated thereunder have plainly required the inclusion of shift differential pay in determining the "regular rate" by virtue of its incorporation of the FLSA's "regular rate" provisions and jurisprudence.

47.     Based on the long-established and clear legal requirement that shift differential pay be included as part of employees' total compensation for purposes of determining their statutory overtime rate of pay under the FLSA and NYLL, there is no nonfrivolous justification for Defendants' failure and refusal to do so or for any claimed lack of notice of such requirement.

48.     As a direct and proximate result of Defendants' refusal to include the shift differential pay in determining employees' statutory overtime rate of pay, Plaintiff and members of the FLSA Class and NYLL Overtime Subclass have been denied overtime compensation in violation of the FLSA and NYLL.

49.     In or about October 2022, as a result of an investigation by the U.S. Department of Labor, Defendants made a partial payment of the back wages and liquidated damages owed to Plaintiff and members of the FLSA Collective and NYLL Overtime Subclass under the FLSA arising from their exclusion of the shift differential pay from employees' total compensation for purposes of determining their statutory overtime rate of pay.  However, those partial payments only covered federal violations under the FLSA for the approximate time period of October 1, 2020 to October 1, 2022, and thus did not remedy the NYLL violations or any overtime pay violations outside of that time period.

**Inaccurate Wage Statement Allegations**

50.     Since at least March 3, 2017, Plaintiff has received weekly wage statements or "earning statements" from Defendants.

51.     During weeks when Plaintiff worked second or third shift, the wage statements failed to state the rate of pay and number of hours worked for such shifts.

52.     The wage statements also failed to state the accurate overtime rate as a result of Defendants' willful failure to include the shift differential pay when calculating the overtime pay rate.

53.     By way of example:

a.      For the work week ending on May 5, 2022, during which Plaintiff worked second and third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his second- or third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

b.      For the work week ending on May 9, 2021, during which Plaintiff worked third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

c.      For the work week ending on October 18, 2020, during which Plaintiff worked third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

d.      For the work week ending on August 11, 2019, during which Plaintiff worked third shift, Plaintiff received a wage statement that did not reflect his hourly

rate or number of hours worked for his third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

e.    For many work weeks in 2018 and 2017 during which Plaintiff worked second and/or third shift, Plaintiff received a wage statement that did not reflect his hourly rate or number of hours worked for his second- or third-shift work, and that reflected an overtime rate that was improperly based on one and one-half times his normal hourly rate, instead of one and one-half times his normal hourly rate plus the shift differential pay.

54.    The hundreds of other wage statements that Plaintiff received from March 3, 2017 to the present contained similar omissions and errors.

55.    Defendants' failure to include all rates of pay and the number of hours worked for second- or third-shift work, and the correct overtime rate on employees' wage statements was part of a uniform, systematic payroll practice or procedure that impacted all hourly employees who worked second or third shift and/or worked in excess of 40 hours in a given week.

56.    Indeed, since at least March 3, 2017, Defendants have provided inaccurate wage statements to all members of the NYLL Wage Statement Subclass in the manner described above.

57.    The nature of the omissions and errors on the wage statements provided to Plaintiff and members of the NYLL Wage Statement Subclass was such that Plaintiff and, upon information and belief, members of the NYLL Wage Statement Subclass were unaware of their

hourly rate or hours worked for their second- and third-shift work and, thus, were prevented from discovering that Defendants were using the incorrect overtime rate due to the exclusion of shift differential pay.

58.     Accordingly, the omissions and errors on the wage statements provided to Plaintiff and members of the NYLL Wage Statement Subclass resulted in the underpayment of overtime compensation as set forth in paragraphs 32-49 above.

59.     As a direct and proximate result of Defendants' conduct in providing inaccurate wage statements to Plaintiff and members of the NYLL Wage Statement Subclass in the manner described, Plaintiff and members of the NYLL Wage Statement Subclass have been injured thereby in violation of the NYLL.

**FIRST CAUSE OF ACTION**

**Failure to Pay Overtime Compensation**
**Section 7 of the FLSA, 29 U.S.C. § 207**
**By Plaintiff on behalf of Himself and the FLSA Class**

60.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-59 above as if fully set forth herein.

61.     Plaintiff and members of the FLSA Class are nonexempt employees entitled to be paid at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty (40) in a work week.

62.     Plaintiff and members of the FLSA Class were entitled to be paid shift differential pay for working second or third shift and to have that shift differential pay included in their total weekly compensation for purposes of determining their statutory overtime rate of pay.

63.     Defendants unlawfully excluded Plaintiff's and FLSA Class members' shift differential pay from their total weekly compensation for purposes of determining their statutory overtime rate of pay, thus denying them overtime compensation in work weeks when they worked second or third shift, and in excess of forty (40) hours.

64.     Defendants' actions constituted a willful violation of the FLSA.

65.     Defendants are liable to Plaintiff and members of the FLSA Class for all unpaid overtime compensation, an equal amount of liquidated damages, prejudgment interest, reasonable attorney's fees and costs, and all other relief afforded under the FLSA.

**SECOND CAUSE OF ACTION**

**Failure to Pay Overtime Compensation**
**Articles 6 and 19 of the NYLL, N.Y. Lab. Law Arts. 6, 19**
**By Plaintiff on behalf of Himself and the NYLL Overtime Subclass**

66.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1-65 above as if fully set forth herein.

67.     Plaintiff and members of the NYLL Overtime Subclass are nonexempt employees entitled to be paid at a rate of one-and-a-half times their regular rate of pay for all hours worked in excess of forty (40) in a work week.

68.     Plaintiff and members of the NYLL Overtime Subclass were entitled to be paid shift differential pay for working second or third shift and to have that shift differential pay included in their total weekly compensation for purposes of determining their statutory overtime rate of pay.

69.     Defendants unlawfully excluded Plaintiff's and NYLL Overtime Subclass members' shift differential pay from their total weekly compensation for purposes of

determining their statutory overtime rate of pay, thus denying them overtime compensation in

work weeks when they worked second or third shift, and in excess of forty (40) hours.

70.     Defendants' actions constituted a violation of the NYLL.

71.     Defendants are liable to Plaintiff and members of the NYLL Overtime Subclass for

all unpaid overtime compensation, an equal amount of liquidated damages, prejudgment

interest, reasonable attorney's fees and costs, and all other relief afforded under the NYLL.

### THIRD CAUSE OF ACTION

**Failure to Provide Accurate Wage Statements**
**Section 195(3) of the NYLL, N.Y. Lab. Law § 195(3)**
**By Plaintiff on behalf of Himself and the NYLL Wage Statement Subclass**

72.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs

1-71 above as if fully set forth herein.

73.     Defendants have provided inaccurate weekly wage statements to Plaintiff and

members of the NYLL Wage Statement Subclass.

74.     During weeks when Plaintiff and members of the NYLL Wage Statement Subclass

worked second or third shift, the wage statements failed to state the rate of pay and number of

hours worked for such shifts.

75.     The nature of the omissions and errors on the wage statements provided to

Plaintiff and members of the NYLL Wage Statement Subclass was such that Plaintiff and, upon

information and belief, members of the NYLL Wage Statement Subclass were unaware of their

hourly rate or hours worked for their second- and third-shift work and, thus, were prevented

from discovering that Defendants were using the incorrect overtime rate due to the exclusion

of shift differential pay.

76.     Accordingly, the omissions and errors on the wage statements provided to Plaintiff and members of the NYLL Wage Statement Subclass resulted in the underpayment of overtime compensation as set forth in paragraphs 32-49 above.

77.     The wage statements also failed to state the accurate overtime rate as a result of Defendants' willful refusal to include the shift differential pay when calculating the overtime pay rate.

78.     Defendants' actions constituted a violation of the NYLL.

79.     Defendants are liable to Plaintiff and members of the NYLL Wage Statement Subclass for all damages not to exceed the statutory limits, prejudgment interest, reasonable attorney's fees and costs, and all other relief afforded under the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment:

a.     Certification of this action as a collective action on behalf of the FLSA Class and permission to issue notice pursuant to 29 U.S.C. § 216(b);

b.     Certification of this action as a class action on behalf of the NYLL Overtime Subclass and the NYLL Wage Statement Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.     An award of unpaid overtime compensation due under the FLSA and NYLL;

d.     An award of liquidated damages equal to the amount of unpaid overtime compensation due under the FLSA and NYLL;

e.     An award of damages not to exceed the statutory limits;

{B0310705.1}

f.     An award of attorney's fees and costs;

g.     Pre-judgment and post-judgment interest, as provided by law; and

h.     Any and all other such relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial on every issue so triable.

DATED:  March 3, 2023
          Syracuse, New York                    **BLITMAN & KING LLP**

                                                s/ Brian J. LaClair
                                                Brian J. LaClair (NDNY Bar Roll # 515995)
                                                F. Wesley Turner (NDNY admission pending)
                                                Franklin Center, Suite 300
                                                443 North Franklin Street
                                                Syracuse, New York 13204
                                                (315) 422-7111
                                                bjlaclair@bklawyers.com
                                                fwturner@bklawyers.com

                                                *Attorneys for Plaintiff Nathan Mehaffy,*
                                                *individually and on behalf of all others*
                                                *similarly situated*

**NOTICE OF PROPOSED CLASS AND COLLECTIVE ACTION SETTLEMENT**
**AND FINAL SETTLEMENT APPROVAL HEARING**

*Nathan Mehaffy, et al. v. Knowlton Technologies, LLC, et al.*
No. 5:23-CV-292

**I.      SUMMARY OF THE SETTLEMENT AND YOUR RIGHTS**

Because your rights will be affected by this Settlement, it is extremely important that

you read this Notice carefully.

**1.      To Whom This Notice Is Directed**

This Notice, which has been approved by the Court, is to notify Class Members (defined

below) in the class action "*Nathan Mehaffy, et al. v. Knowlton Technologies, LLC, et al.*"

currently pending in the United States District Court for the Northern District of New York, of

the proposed Settlement of that case.  The Court has granted preliminary approval of the

Settlement and has certified the Class for Settlement purposes only.  The Court has certified,

for settlement purposes, the following class (the "Class" or "Class Members"):

> All persons employed by Knowlton as hourly non-exempt at the Knowlton
> facility in Watertown, New York, that are listed on Exhibit A [to the Settlement
> Agreement].

According to the records of Knowlton, you are a member of the Class.  The purpose of

this Notice is to inform you about the proposed Settlement and to explain your rights and

options with respect to the Action and the Settlement.

**2.      What Is a Class Action?**

A class action is a lawsuit in which the claims and rights of many people are litigated in a

single court proceeding.  In this case, Nathan Mehaffy (the "Class Representative") asserted

claims on behalf of all the Class Members.

3.      **Important Options and Dates**

You have several options:

a.      If you wish to claim your share of the settlement monies, you do not need to do anything.  If/when the Court grants final approval to the Settlement, you will receive a check in the mail and, once the check is negotiated, you will be deemed to have released your claims against Knowlton consistent with Section III.A below.

b.      You may object to the Settlement in writing by [**30 days after Notice is mailed**], 2023, following the procedure described in Section IV.6 below.

c.      You may request to be excluded from the Settlement by [**30 days after Notice is mailed**], 2023, following the procedure described in Section IV.5 below, in which case you will no longer be a Class Member and will **not** receive any money under this Settlement; however, you will not release your claims.

II.     **BACKGROUND OF THE ACTION**

1.      **The Claims at Issue**

In March 2023, Plaintiff Nathan Mehaffy, on behalf of himself and others similarly situated, filed this class and collective action against Knowlton for failure to pay overtime compensation in violation of Section 7 of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, and Articles 6 and 19 of the New York Labor Law ("NYLL"), N.Y. Lab. Law, Arts. 6, 19.  Specifically, Plaintiff alleges that Knowlton failed to include employees' shift-differential

wages and gainshare wages when determining their overtime rate of pay.  Plaintiff alleges that this resulted in underpayments to himself and members of the Class.

Plaintiff also filed this action, individually and on behalf of all others similarly situated, against Knowlton for failure to provide accurate wage statements in violation of Section 195(3) of the NYLL, N.Y. Lab. Law § 195(3).  Specifically, Plaintiff alleges that during weeks when employees worked overtime on second or third shift, the wage statements failed to state the rate of pay, number of hours worked for such shifts, and accurate overtime rate as a result of Knowlton's failure to include all wages when calculating the overtime pay rate.  Accordingly, Plaintiff alleges that he and members of the Class received inaccurate wage statements.

### 2.      Knowlton's Denial of Liability

Knowlton denies all of the Class Representative's allegations.  Specifically, Knowlton denies that the Class Representative or the Class Members are owed any additional compensation for the hours that they worked or any compensation for inaccurate wage statements.

### 3.      Settlement Negotiations and Agreement

After filing this action, Plaintiff and his counsel requested informal discovery from Knowlton so that they could analyze and assess the issues of liability and damages for the claims alleged in the Complaint.  On September 20, 2023, after more than six months of informal discovery exchanges, investigation and analysis, and arms-length negotiations, the parties executed the comprehensive settlement agreement for which preliminary approval is now sought.

The parties in the Action disagree as to the probable outcome of the Action with respect to liability and damages if it were not settled.  While the Class Representative and his attorneys were prepared to proceed with litigating the case described above, they recognize that litigating is a risky proposition and that they may not have prevailed on any or all of their claims.  Likewise, while Knowlton was confident that no class or collective action could be certified for trial purposes and that they have legal and factual arguments that would result in the dismissal of the Class Representative's claims, they recognize the risks, distractions, and costs involved with litigation.

**III.     SUMMARY OF THE SETTLEMENT**

This Settlement is the result of good-faith, arms-length negotiations between the Class Representatives and Knowlton, through their respective attorneys, which included months of discussions, an informal exchange of documents and data, and negotiations through counsel experienced in these types of cases.  The Settlement represents a compromise regarding disputed claims, considering the risks and uncertainties of continued litigation.  The Class Representative and his counsel have determined that the Settlement is fair, reasonable and adequate and is in the best interests of the Class Members.

The attorneys for the Putative Class in the Action ("Class Counsel") are:

|  |  |
|---|---|
| Brian J. LaClair | BLITMAN & KING LLP |
| | Franklin Center, Suite 300 |
| | 443 North Franklin Street |
| | Syracuse, NY 13204-5412 |
| | Telephone: (315) 422-7111 |

The attorneys for Knowlton are:

|  |  |
|---|---|
| James M. Coleman | CONSTANGY, BROOKS, SMITH & PROPHETE LLP |
| | 12500 Fair Lakes Circle, Suite 300 |
| | Fairfax, VA 22033-3804 |
| | Telephone: (571) 522-6111 |

{B0349941.1}

Timothy Barbetta                    CONSTANGY, BROOKS, SMITH & PROPHETE LLP
                                    175 Pearl Street, Suite C-402
                                    Brooklyn, NY 11201
                                    Telephone: (646) 341-6554

**1.      The Settlement Agreement and the Court's Final Approval Hearing**

The parties have presented the Settlement to the Court for its review.  On [**DATE**]

2023, the Court granted preliminary approval of the proposed Settlement.  The Court will

decide whether to give final approval to the proposed Settlement, including the proposed Class

Counsel's Attorneys' Fees and Costs Payment, at a hearing scheduled for [**DATE**] ("Final

Approval Hearing").  See Section V below for details.  Money will be paid to Class Members

under the Settlement only if and after the Settlement is granted final approval.

**2.      Summary of Terms of the Proposed Settlement**

Subject to Court approval, the terms of the Settlement are as follows:

a.      Knowlton will pay [**insert amount**] (the "Settlement Fund") which

covers:  (i) all compensation to Class Members; and (ii) all Class Counsel's

fees and litigation costs.

b.      After deduction from the Settlement Amount of the fees and costs

described above in Paragraph (a), a Settlement Administrator approved

by the Court will make a settlement payment to each Class Member who

does not request to be excluded from the Class and Settlement.  These

payments will be determined by Class Counsel's estimate of each Class

Member's alleged damages based on data which was made available by

Knowlton ("Settlement Share").

c.      In some cases, a portion of the payments made to a Class Member will be

subject to required wage withholdings and deductions; therefore, the net

payable amount will be less than the gross amount of the Settlement Share. Neither Class Counsel nor Knowlton make any representations concerning tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice.

d.  Class Counsel will ask the Court to award it reasonable attorneys' fees and costs which shall not exceed 29.5% of the common fund.

**3.  Releases of Claims**

Upon the Court entering a Final Order Approving Settlement, every Class Member who has not timely excluded him or herself in a writing filed with the Court shall be deemed to have completely released and forever discharged Released Parties from all the NYLL claims that are alleged in the Complaint or could have been alleged in the Complaint, including but not limited to a release of claims under New York Labor Law Articles 6 and 19 and Section 195(3), as of the effective date of the Settlement Agreement. Collective Members, by negotiating their settlement check, will opt into the Lawsuit and completely release and forever discharge Released Parties from federal wage and hour law claims that were alleged, or could have been alleged, including but not limited to a release of claims under the FLSA, for the time period between March 3, 2017 to the present.

**IV.   HOW TO RECEIVE MONEY FROM THE SETTLEMENT**

In order to receive a payment under the Settlement, you do not need to do anything.

1.     **How Will My Settlement Share Be Calculated?**

After deducting from the Settlement Fund for approved attorney's fees and litigation costs, a Settlement Administrator approved by the Court will make a settlement payment to each Class Member who has not requested to be excluded from the Class and Settlement. These payments were determined by reviewing Knowlton's time and pay records and calculating the unpaid overtime compensation, if any, allegedly owed to each Class Member during the statutory period, plus an equal amount in "liquidated damages." (Note that some Class Members did not have any allegedly unpaid overtime compensation or have already been made whole by Knowlton's prior settlement with the U.S. Department of Labor.) In addition, each Class Member is entitled to an equal share of the remaining amount .which represents a payment to resolve the inaccurate wage statement claims. **According to our records, your total Settlement Share, including gross overtime wages, if applicable, is approximately [\*\*insert amount\*\*]**. If you have any questions on the settlement or allocation, you can contact the Settlement Administrator that sent this Notice and/or Class Counsel.

2.     **When Will My Share of the Settlement Be Distributed to Me?**

Within thirty (30) days after the Court's order granting final approval of the Settlement becomes final and non-appealable, the Settlement Administrator will begin the process of mailing the Settlement Share checks to all eligible Class Members.

3.     **Settlement Share Checks Must Be Cashed Within 90 Days**

Settlement share checks must be cashed within ninety (90) days of the date the check is issued. If any Class Member does not cash the check for his or her Settlement Share within 90 days after issuance, it will thereafter be paid to a charity chosen by the Plaintiff.

4.      **Tax Consequences**

A portion of some of the Settlement Shares paid to Class Members will constitute payment for wages and reported on Form W-2s, while other portions will constitute payment for interest/penalties (i.e. liquidated damages) and reported on Form 1099s.  The Settlement Administrator will report all payments to government authorities including the IRS as required by law, and shall make all legally required deductions, withholdings and/or employment tax payments out of the Settlement Fund.

5.      **To Request Exclusion from the Settlement**

If you do not want to participate in the Settlement, you have the right to be excluded from the Class.  Any Class Member who wishes to be excluded from the Class and Settlement must submit a request for exclusion to the address specified in the Notice by [**thirty (30) calendar days after the mailing of the Notice**], 2023.  To be effective, the request for exclusion must include the Class Member's: (i) full name, address, and telephone number; (ii) a specific statement of his or her desire to be excluded from the settlement of the Case; and (iii) signature.  Any Class Member who fails to submit a timely request to be excluded shall be subject to and bound by this Agreement and every order or judgment entered pursuant to this Agreement.

If you properly submit a timely written request to be excluded from the Class and Settlement, you will not be eligible to receive any of the benefits under the Settlement and you will not have standing to object to the Settlement.  You will, however, retain whatever legal rights you may have against Knowlton with regard to the claims released by the Settlement.

**6.      How to Object to the Settlement (If Desired)**

If you have not timely submitted a written request to be excluded from the Settlement,

you may object to the Settlement for any reason by submitting a written notice of objection.

However, if the Court grants final approval to the Settlement, you will still be bound by the

Settlement.

Any Class Member who intends to object to the fairness of the Settlement must, by

[**thirty (30) calendar days after the mailing of the Notice**], 2023, file any such objection

with the Court and provide copies of the objection to: U.S. District Court Clerk's Office,

Northern District of New York, James M. Hanley Federal Building & U.S. Courthouse, 100 S.

Clinton St., Syracuse, NY 13261; Mehaffy's Counsel Brian J. LaClair, Blitman & King LLP, 443 N.

Franklin Street, Syracuse, NY 13204; and Knowlton's Counsel James M. Coleman, Constangy,

Brooks, Smith & Prophete, LLP, 12500 Fair Lakes Circle, Suite 300, Fairfax, VA 22033.

Any objection to the Agreement must include: (i) the objector's full name, address, and

telephone number; (ii) a written statement of all factual and legal support for such objection;

and (iii) copies of any papers, briefs, or other documents upon which the objection is based.

Any Class Member who does not file a timely written objection to the settlement shall be

foreclosed from seeking any adjudication or review of the settlement by appeal or otherwise.

Any Class Member who does not object in the manner described above shall be deemed

to have waived any objections, and shall forever be foreclosed from objecting to the fairness or

adequacy of the proposed Settlement, the payment of attorneys' fees, litigation costs, the

claims process, and any and all other aspects of the Settlement.  If you comment through an

attorney, you will be solely responsible for the fees and costs of your own attorney.  Regardless

of whether you file an objection, you will be deemed to have released all of the Released Claims

as set forth above unless you properly request exclusion from the Settlement as set forth above.

V.      **FINAL APPROVAL HEARING ON PROPOSED SETTLEMENT**

The Court will hold a Final Approval Hearing on the fairness and adequacy of the proposed Settlement, the plan of allocation for the Settlement Shares and Class Counsel's request for attorneys' fees and costs on [**INSERT DATE AND TIME**] in Courtroom [**##**] of the United States District Court for the Northern District of New York, located at U.S. District Court, Northern District of New York, James M. Hanley Federal Building & U.S. Courthouse, 100 S. Clinton St., Syracuse, NY 13261.  The Final Approval Hearing may be continued without further notice to Class Members.  **It is not necessary for you to appear at this hearing**.  You may appear at the hearing if you wish, if you have given notice of any objections to the Settlement under the procedures set forth above.  The Court may cancel the Final Approval Hearing and issue a decision on the motion papers in the absence of any objections being filed.

VI.     **ADDITIONAL INFORMATION**

1.      **No Retaliation**

Knowlton will not take any action against employees in retaliation for their decision to participate in the settlement.   It is unlawful for any employer to do so, and Knowlton is committed to a retaliation-free workplace and encourages you to participate in this settlement.

2.      **No Cost to You**

The Settlement does not require you to pay money out of pocket.  However, you are responsible for all taxes owed on your paid Settlement Share.

     **3.**      **No Tax Advice**

Any perceived tax advice in this Notice was not intended or written to be used, and it cannot be used by any recipient, for the purpose of avoiding any tax obligations or penalties that may be imposed on any person.  This Notice imposes no limitation on the disclosure of the tax treatment or tax structure of any transaction.  Class Counsel cannot give you tax advice, nor can Knowlton or counsel for Knowlton.

     **4.**      **This Notice Provides Only a Summary**

This Notice only summarizes the Action, the Settlement, and other related matters.  **For more information, or to request a copy of the Settlement Agreement & Release or other records in this Action, you may contact Class Counsel.  Do not contact the Court for information regarding this Settlement or the claim process.**

     **5.**      **If You Have Questions**

Any questions regarding this Notice or how to request exclusion from or object to the Settlement should be directed to the Settlement Administrator at the above address and telephone number.  If you have further questions about the Settlement, you may also contact Class Counsel at the above address and telephone number listed in this Notice.  If your address changes, or is different from the one on the envelope enclosing this Notice, please promptly notify the Settlement Administrator.

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**
